MATTHEW I. KNEPPER, ESQ.
Nevada Bar No. 12796
**NEVADA BANKRUPTCY ATTORNEYS LLC**
5940 S Rainbow Blvd., Suite 400
PMB 99721
Las Vegas, NV 89118
Phone/ Fax: (702) 660-4228
Email: mknepper@nvbankruptcyattorneys.com

*Proposed Counsel for Debtor,*
*Shana Dawn Davis*

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF NEVADA (LAS VEGAS)

| In Re: <br><br> SHANA DAWN DAVIS <br><br> Debtor. | Case No.: BKS-24-12632-nmc <br> Chapter 11 <br><br> **OPPOSITION TO THE UNITED STATES TRUSTEE'S MOTION TO DISMISS OR CONVERT CHAPTER 11 CASE** <br><br> Hearing Date: January 27, 2026 <br> Hearing Time: 9:30 a.m. |
|---|---|

Debtor Shana Dawn Davis ("Debtor") hereby opposes the Motion of the United States Trustee under 11 U.S.C. § 1112(b) and Federal Rules of Bankruptcy Procedure 1017(f) and 9014 to Dismiss or Convert Chapter 11 Case (ECF No. 79) ("Motion"). This Opposition is supported by the concurrently filed Declaration of Shana Dawn Davis ("Davis Declaration"), the Debtor's amended and updated monthly operating reports filed concurrently herewith, and the record of this case.

Section 1112(b) requires a mandatory two-step analysis. The Court must first determine whether the United States Trustee has established "cause" by a preponderance of the evidence. *Sullivan v. Harnisch (In re Sullivan)*, 522 B.R. 604, 614 (B.A.P. 9th Cir. 2014). If cause is established, the Court must then determine whether conversion or dismissal is in the best interests of creditors and the estate, and must also consider whether appointment of a chapter 11 trustee or

examiner is instead in the best interests of creditors and the estate. 11 U.S.C. § 1112(b)(1); In re Sullivan, 522 B.R. at 612. Courts within the Ninth Circuit also recognize that the Court has an independent obligation to consider both conversion and dismissal and to determine what outcome best serves all creditors, not simply the most vocal or the largest creditor. In re Sullivan, 522 B.R. at 612-14.

The Motion focuses on three themes: (i) alleged gross mismanagement inferred from historical reporting presentation, discretionary spending, and the use of multiple non-debtor entity accounts; (ii) delinquency of two monthly operating reports; and (iii) asserted delay in obtaining confirmation. The Debtor does not dispute that the prior presentation of monthly operating reports created avoidable complexity in a case involving an individual debtor and multiple non-debtor entities. Since the Motion was filed, the Debtor has implemented the reporting and operational corrections that the United States Trustee has repeatedly identified as the "cleanest" approach: the monthly operating report now ties directly to the Debtor's Wells Fargo Debtor-in-Possession ("DIP") statement totals, without netting transfers through external schedules and without embedding non-debtor statements in the MOR filing. These changes materially narrow the disputes raised in the Motion and demonstrate that any asserted reporting issues are being cured within a reasonable time.

On this record, the United States Trustee has not carried its burden to show cause warranting the extraordinary remedy of conversion or dismissal. Alternatively, to the extent the Court finds cause, the Debtor can satisfy the requirements of 11 U.S.C. § 1112(b)(2) and requests a short, enforceable cure period and case-management milestones tailored to the United States Trustee's concerns, rather than immediate conversion or dismissal.

/ / /

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    BACKGROUND**

1. The Debtor commenced this chapter 11 case on May 28, 2024. (ECF No. 1.) The United States Trustee filed the Motion on October 1, 2025. (ECF No. 79.)

2. The Motion relies heavily on the declaration of United States Trustee Bankruptcy Auditor Bryan Coleman ("Coleman Declaration"). (ECF No. 80.) The Coleman Declaration reports that, based on the auditor's recalculations from the Debtor's filed MORs and attachments for June 2024 through June 2025, the Debtor underreported receipts by $74,003.72 and disbursements by $74,274.67 in the aggregate, and that most disbursements during that period related to entertainment, restaurants, hotel/resort spending, and luxury retail transactions. (ECF No. 80 ¶¶ 8-13.)

3. After the Motion was filed, Debtor's counsel conferred with the United States Trustee's trial attorney and auditor about a reporting format that could be readily understood by creditors and other parties in interest. In that discussion, the United States Trustee personnel emphasized that, for an individual debtor who pays personal expenses from a single DIP account and deposits personal income into that account, Part 1 of the MOR should tie directly to the DIP statement totals (beginning balance, total deposits/credits, total withdrawals/debits, and ending balance).

4. They also acknowledged that where there are no checks, the bank balance effectively functions as the ledger balance, reducing any practical need for a traditional reconciliation in the personal-account context.

5. Consistent with that guidance, the Debtor is filing concurrently herewith an amended October 2025 monthly operating report and an updated December 2025 monthly operating report prepared on a bank-statement-driven basis. For October 2025, the Wells Fargo statement period activity summary reflects a beginning balance of $15,168.40, deposits/additions of $48,150.66,

NEVADA BANKRUPTCY ATTORNEYS LLC
5940 S. RAINBOW BLVD., SUITE 400
PMB 99721
LAS VEGAS, NV 89118
PHONE: (702) 805-1597
FAX: (702) 850-2192

withdrawals/subtractions of $55,737.47, and an ending balance of $7,581.59 (net cash flow of approximately -$7,586.81). The amended October 2025 MOR reports those figures in Part 1 in rounded whole-dollar form. For December 2025, the Wells Fargo statement period activity summary reflects a beginning balance of $5,092.48, deposits/additions of $40,003.24, withdrawals/subtractions of $44,997.55, and an ending balance of $98.17 (net cash flow of approximately -$4,994.31), which is likewise reported on the December 2025 MOR in whole-dollar form. These later MORs reflect improved presentation and reduced total disbursements compared to the historical averages cited in the Coleman Declaration.

6. The United States Trustee also asserts cause based on the Debtor's failure to timely file monthly operating reports for March 2025 and July 2025, and on the asserted lack of meaningful progress toward confirmation despite the Debtor having filed a plan and disclosure statement earlier in 2025. (ECF No. 79 at 2-3.)

7. The Debtor addresses those points below and proposes concrete cure steps and case milestones designed to resolve the United States Trustee's legitimate transparency concerns while preserving the rehabilitative purposes of chapter 11.

## II.    LEGAL STANDARD

Section 1112(b)(1) provides that, on request of a party in interest and after notice and a hearing, the Court shall convert or dismiss a chapter 11 case, whichever is in the best interests of creditors and the estate, for cause unless the Court determines that appointment of a trustee or examiner under § 1104(a) is in the best interests of creditors and the estate. 11 U.S.C. § 1112(b)(1). The examples of cause listed in § 1112(b)(4) are non-exclusive, and the Court has discretion to consider case-specific factors in determining whether cause exists. *In re Consol. Pioneer Mortg. Entities*, 248 B.R. 368, 375 (B.A.P. 9th Cir. 2000), *aff'd*, 264 F.3d 803 (9th Cir. 2001).

The Ninth Circuit BAP has articulated a mandatory two-step framework for § 1112(b). The Court must first determine whether cause exists, and if so, must then choose between conversion or dismissal based on the best interests of creditors and the estate. *In re Nelson*, 343 B.R. 671, 675 (B.A.P. 9th Cir. 2006). The movant bears the initial burden to establish cause by a preponderance of the evidence. *In re Sullivan*, 522 B.R. at 614. The bankruptcy court also has an independent obligation to consider the relative consequences of conversion and dismissal for all creditors and the estate, regardless of how the parties frame the requested remedy. *Id*. at 612-14.

Once cause is established, the burden shifts to the opposing party to establish the requirements of the § 1112(b)(2) exception, including that the case presents "unusual circumstances" and that the debtor can cure the act or omission within a reasonable time and confirm a plan within a reasonable period. 11 U.S.C. § 1112(b)(2); *In re Products Int'l Co.*, 395 B.R. 101, 108-10 (Bankr. D. Ariz. 2008). The requirements of § 1112(b)(2) are conjunctive. *In re Baroni*, 36 F.4th 958, 970 (9th Cir. 2022).

For purposes of the reporting-based grounds asserted here, § 1112(b)(4)(B) provides cause for "gross mismanagement of the estate," and § 1112(b)(4)(F) provides cause for "unexcused failure to satisfy timely any filing or reporting requirement" established by the Code or applicable rules. 11 U.S.C. § 1112(b)(4)(B), (F). The qualifier "unexcused" reflects that the Court retains discretion to determine whether the debtor has provided a reasonable justification for a reporting failure and whether it can be cured within a reasonable time. *In re Hoyle*, 2013 WL 210254, at *21 (Bankr. D. Idaho Jan. 18, 2013).

Monthly operating reports and the financial disclosures contained within them are central to the chapter 11 process, allowing the United States Trustee, creditors, and parties in interest to assess a debtor's financial condition and whether the estate is suffering continuing losses. *YBA*

*Nineteen, LLC v. IndyMac Venture, LLC (In re YBA Nineteen, LLC)*, 505 B.R. 289, 303 (S.D. Cal. 2014). Consistent with that principle, filing a report is not meaningful if the content is inaccurate or cannot be tied back to source records. *In re Hoyle*, 2013 WL 210254, at *21.

**III. ARGUMENT**

    **A. THE UNITED STATES TRUSTEE HAS NOT CARRIED ITS BURDEN TO ESTABLISH CAUSE FOR CONVERSION OR DISMISSAL UNDER SECTION 1112(b) ON THIS RECORD.**

The United States Trustee's asserted grounds for conversion or dismissal are premised largely on (a) alleged gross mismanagement inferred from historical MOR presentation and discretionary spending, (b) delinquency of two MOR months, and (c) asserted delay in prosecuting the case to confirmation. The Debtor addresses each ground in turn.

    **1. The Debtor's amended and updated MORs address the United States Trustee's core transparency concern by tying Part 1 totals directly to the DIP statement.**

A principal theme of the Motion is that the Debtor's prior monthly reporting was not readily understandable to third parties and that the United States Trustee recalculated receipts and disbursements using alternative assumptions. The Debtor has responded by adopting the reporting method the United States Trustee has repeatedly described as the simplest and most independently understandable: the DIP bank statement drives Part 1 receipts and disbursements as gross totals for the month, and the MOR presents the month's financial story as "everything in" and "everything out" of the DIP account. The amended October 2025 MOR, November 2025 MOR, and the December 2025 MOR reflect that approach.

This change materially narrows the dispute underlying the United States Trustee's claimed underreporting variances. To the extent variances in earlier months were driven by methodological differences concerning transfers, reversals, or business-account activity, reporting the DIP

statement totals as gross receipts and disbursements eliminates those ambiguities going forward and provides a reproducible tie-out for creditors and the Court. The Debtor is not conceding the United States Trustee's characterization of historical differences as intentional underreporting; rather, the Debtor is adopting a format that resolves the United States Trustee's stated readability concerns prospectively.

### 2. The United States Trustee has not shown gross mismanagement under section 1112(b)(4)(B) in light of the Debtor's corrective measures and the heightened "gross" standard.

Section 1112(b)(4)(B) requires "gross" mismanagement, not mere mismanagement. *In re Swift Air, LLC*, No. 12-10091, 2013 WL 6631622, at *12 (Bankr. D. Ariz. Dec. 16, 2013). Courts applying § 1112(b)(4)(B) focus on postpetition conduct affecting estate assets and the debtor's ongoing reporting of income and expenses. *In re Rosenblum*, 608 B.R. 529, 536 (Bankr. C.D. Cal. 2019). A heightened showing is required because some degree of operational or reporting imperfection is common in reorganizations. *Swift,* 2013 WL 6631622, at *12.

Here, the Motion relies on a historical period (June 2024 through June 2025) and asserts that the Debtor's spending patterns, use of non-debtor accounts, and the auditor's recalculations of receipts and disbursements demonstrate gross mismanagement. (ECF No. 79 at 2-5; ECF No. 80 ¶¶ 8-13.) The Debtor recognizes that earlier months reflected avoidable complexity caused by the Debtor's use of multiple business accounts and cash activity. But the relevant question under § 1112(b)(4)(B) is whether the Debtor is presently managing the estate in a manner that constitutes gross mismanagement, and whether any identified deficiencies are continuing and incapable of cure.

The Debtor has implemented the corrective steps designed to eliminate the sources of confusion identified by the United States Trustee: the Debtor is routing personal receipts into the

DIP account, paying personal expenses from the DIP account, and presenting monthly reporting that ties directly to the bank statement totals. The Debtor has also curtailed the kind of cash movements that created volatility and tracing issues. These steps are concrete and verifiable and substantially undermine an inference of ongoing gross mismanagement.

The Debtor's later-month reporting further supports that conclusion. The Coleman Declaration reports average monthly disbursements of $66,748.89 during June 2024 through June 2025. (ECF No. 80 ¶ 10.) In contrast, the DIP account statement totals for October 2025 and December 2025 reflect materially lower total monthly disbursements - $55,737.47 and $44,997.55, respectively. While the Debtor does not contend that two months alone establish long-term rehabilitation, these later-month totals are probative of improved discipline and improved estate stewardship, and they are inconsistent with a conclusion that the Debtor is continuing the same spending patterns relied upon in the Motion as evidence of gross mismanagement.

### 3. Any delinquency in MOR filing can be cured promptly and does not compel conversion or dismissal under section 1112(b)(4)(F) on this record.

The United States Trustee asserts cause under § 1112(b)(4)(F) based on the Debtor's failure to timely file the MORs for March 2025 and July 2025. (ECF No. 79 at 2-3.) The Debtor recognizes that MOR compliance is a core obligation in chapter 11. *In re YBA Nineteen*, 505 B.R. at 303. But § 1112(b)(4)(F) requires an "unexcused" failure, and courts recognize discretion to determine whether a failure is excused and whether it can be cured within a reasonable time. *Hoyle*, 2013 WL 210254, at *21.

The Debtor is prepared to cure the delinquent months promptly and to do so using the same bank-statement-driven method that the United States Trustee has requested, so that each month is independently understandable and ties to the DIP statement totals. In the meantime, the Debtor has already filed amended and updated MORs for later months reflecting the corrected format. To the

NEVADA BANKRUPTCY ATTORNEYS LLC
5940 S. RAINBOW BLVD., SUITE 400
PMB 99801
LAS VEGAS, NV 89118
PHONE: (702) 805-1597
FAX: (702) 850-2192

extent the Court finds prior delinquency to be cause, the Debtor can satisfy the elements of § 1112(b)(2) by demonstrating reasonable justification for the past reporting difficulties in a case involving an individual debtor and multiple non-debtor entities, and by committing to a prompt cure schedule fixed by the Court.

### 4. The asserted delay in confirmation does not warrant conversion or dismissal where the Court can impose near-term case milestones and the Debtor is actively curing the issues that impeded progress.

The Motion also asserts cause based on the Debtor's alleged failure to expeditiously prosecute the case toward confirmation. (ECF No. 79 at 10-11.) Courts recognize that debtors have a duty to prosecute their chapter 11 cases in an expeditious manner and that unjustified delay can constitute cause. *In re Consolidated Pioneer Mortg. Entities*, 248 B.R. at 375; *In re Ellsworth*, 455 B.R. 904, 915 (Bankr. D. Ariz. 2011). But whether delay is "unreasonable" is case-specific, and the remedy is not invariably conversion or dismissal. The Court may instead fashion relief that protects creditors by imposing enforceable deadlines, requiring status reporting, or directing a focused cure plan. See 11 U.S.C. § 105(a).

Here, the Debtor filed a disclosure statement and plan on March 20, 2025, and obtained approval of the disclosure statement in May 2025. (See ECF Nos. 60-61.) The Debtor acknowledges that the case should now move to a confirmation track and is prepared to meet reasonable near-term deadlines for filing any amended plan or amended disclosure statement (if required), distributing solicitation materials, and setting a confirmation hearing. A conditional scheduling order can provide the United States Trustee and creditors with clear oversight and remedies if the Debtor fails to comply, without immediately eliminating the possibility of rehabilitation.

/ / /

### B. EVEN IF CAUSE EXISTS, THE COURT MUST CONSIDER BEST INTERESTS AND THE STATUTORY DEFENSE UNDER SECTION 1112(b)(2).

If the Court finds cause, the analysis does not end there. The Court must independently determine whether conversion or dismissal is in the best interests of creditors and the estate, and must consider whether appointment of a trustee or examiner is more appropriate. 11 U.S.C. § 1112(b)(1); *Sullivan*, 522 B.R. at 612-14. In making the best-interests determination, courts consider a range of factors and apply a case-by-case balancing test. *In re Staff Inv. Co.*, 146 B.R. 256, 260 (Bankr. E.D. Cal. 1992); *In re Premier Golf Props., LP*, 564 B.R. 710, 727 (Bankr. S.D. Cal. 2016).

Here, conversion would likely reduce the estate's ability to fund distributions because the Debtor's income is derived from closely-held operating entities whose value depends materially on the Debtor's continued involvement and on the continuation of operations. A chapter 7 trustee would face immediate practical constraints in operating or monetizing those interests, and conversion would impose additional administrative cost and disruption at a moment when the Debtor has implemented the reporting and cash-handling reforms requested by the United States Trustee. Dismissal, in turn, would eliminate the framework for an orderly plan-based resolution and would return the parties to a fragmented, state-law collection environment without centralized oversight.

Section 1112(b)(2) provides a narrow but meaningful exception where the Court specifically identifies "unusual circumstances" establishing that conversion or dismissal is not in the best interests of creditors and the estate, and where the debtor demonstrates both (i) a reasonable likelihood that a plan will be confirmed within a reasonable period and (ii) that the acts or omissions giving rise to cause were reasonably justified and will be cured within a reasonable time fixed by the Court. 11 U.S.C. § 1112(b)(2); *In re Products Int'l*, 395 B.R. at 108-10. The

NEVADA BANKRUPTCY ATTORNEYS LLC
5940 S. RAINBOW BLVD., SUITE 400
PMB 99721
LAS VEGAS, NV 89118
PHONE: (702) 805-1597
FAX: (702) 850-2192

Debtor submits that this case presents unusual circumstances arising from the intersection of an individual debtor, multiple non-debtor operating entities, and the United States Trustee's reasonable demand for simplified, bank-statement-driven reporting. The Debtor has already implemented the reporting corrections that the United States Trustee requested and is prepared to proceed to confirmation on a near-term schedule. Accordingly, even if the Court finds cause, the Court should deny conversion or dismissal and instead enter a conditional order establishing an enforceable cure and confirmation schedule.

## VI. CONCLUSION

For the foregoing reasons, the Debtor respectfully requests that the Court deny the Motion. In the alternative, to the extent the Court finds cause, the Debtor requests that the Court (a) find that the requirements of 11 U.S.C. § 1112(b)(2) can be satisfied, (b) enter an order fixing a reasonable period to cure any remaining MOR deficiencies and to file any delinquent MOR months using the bank-statement-driven method described above, and (c) set an enforceable schedule for prosecution of confirmation, including deadlines for any amended plan or amended disclosure statement and a confirmation hearing date, so that creditors and the United States Trustee have a clear and transparent framework for oversight.

DATED January 16, 2026.

Submitted by:

**NEVADA BANKRUPTCY ATTORNEYS LLC**

/s/ *Matthew I. Knepper*
Matthew I. Knepper, Esq.
Nevada Bar No. 12796

*Counsel for Debtor*

NEVADA BANKRUPTY ATTORNEYS LLC
5940 S. RAINBOW BLVD., SUITE 400
PMB 99721
LAS VEGAS, NV 89118
PHONE: (702) 805-1597
FAX: (702) 850-2192

11 of 11